ELLIS, Judge.
Plaintiff, Wesley McPherson, instituted this suit against the defendant H. F. Warren for $1,000, based upon the fact that he placed $500 with the defendant as earnest money for the purchase of a portion of Lot 12, Square 1, Rosedale Subdivision, in the City of Baton Rouge, subject to an oral agreement to purchase.
Some time during the month of April, 1948 plaintiff and defendant entered into an oral agreement whereby the defendant agreed to sell to the plaintiff the property for the sum of $5,000 cash. It was understood at the time of the original agreement that the plaintiff was to attempt to obtain a loan sufficient to pay for the property. Subsequent thereto the defendant, stating he had received an offer of $5,000 cash for the real estate from another prospective buyer, requested the plaintiff make a deposit of $500 upon the purchase price of the property. Upon the defendant’s request the plaintiff consulted his attorney and was advised to give the defendant a check for $500, noting upon the back thereof that it was a down payment on the particular lot in question, subject to the loan. The plaintiff gave the defendant on April 12, 1948 a check payable to him for $500, and on the 'back thereof there was this notation: “As down payment on Lot 12, Square 1, Sub. Rosedale, subject to loan.” Defendant cashed this check, and after the plaintiff had *31 made several attempts to obtain a loan, being unable to do so, he asked the defendant to return the $500. This the defendant refused to do and plaintiff brought this suit, first, upon the ground the deposit was earnest money, and in the alternative that he was entitled to the return of his $500 since the payment was made conditioned upon his securing a loan.
The trial court rendered judgment in favor of the defendant, rejecting plaintiff’s demands at his cost, and from this judgment plaintiff has appealed. On the appeal plaintiff is seeking only the return of the $500 deposit.
There is no question but that the agreement to purchase and sell was an oral one. The plaintiff explained to the defendant he was short of cash and would have to borrow most of the money, but he thought he would be able to do this within a reasonable time. This seemed to be agreeable to the defendant and he agreed to give the plaintiff time in which to raise the remainder of the purchase price. In the meantime the defendant received an offer to purchase the property from another person for $5,000 cash, and he called the plaintiff, telling him of this offer and that it would be necessary, if he wanted to buy the property, to put up $500 as a deposit to secure his offer. The plaintiff agreed to this, and after consulting his attorney as to how it could best be done he gave the check in question.
The plaintiff states that the meaning of the notation on the back of the check was that the deposit was made subject to him being able to borrow the necessary funds to meet the purchase price. It seems that the $500 was all the cash he had and that the defendant knew he had to borrow the remainder of the money, and plaintiff positively states in his testimony that the deposit was made subject to him being able to negotiate a loan in order to pay the remainder of the purchase price. The defendant, while he states he knew the plaintiff had to borrow the money, claims he was under the impression the plaintiff could borrow the money, and that he would have no trouble if given a few days to negotiate the loan. He contends that the only meaning of the notation “subject to loan’’ was that the plaintiff was to have time to make arrangements to procure the funds.
Plaintiff did apply to the City National Bank of Baton Rouge for a loan on his mother’s property, but this Bank would not advance enough on this property to meet the plaintiff’s needs. He also applied to the Union Federal Building & Loan Assn, for an increase in an existing loan in the name of the defendant on the property in question, but was told this loan could not be increased more than $600. The defendant refused to take a second mortgage for the difference.
. The plaintiff was unable to secure a loan to meet the balance of the purchase price, and when this became apparent to him he demanded the return of the $500, and when the defendant refused to return this money, plaintiff’s wife consulted attorneys who wrote a letter to the defendant demanding its return.
Another demand was made through plaintiff’s attorney and at this time the defendant offered to take $2600 in cash, that is, the $2,100 which the Bank offered to lend on his mother’s property, and the $500 which he had previously paid, and vendor’s lien note for the balance of $2,400. The defendant’s offer to finance the property came only after he had received letters from the plaintiff’s attorneys demanding the refund of the money. It would seem this offer, coming as and when it did, constituted a counter proposition, different from the original agreement. However, nothing came of this offer, and the defendant later sold the property to a third person for $4,750.
The trial judge based his decision in favor of the defendant upon the fact that in his opinion the endorsement on the back of the check “subject to loan” was ambiguous and uncertain, and must be construed against the plaintiff who made it, since it is well established in our jurisprudence that when an endorsement or notation is made and is ambiguous and uncertain it is to be construed against him who prepared it. The trial judge further stated in his reasons for judgment that the notation “subject to loan” does not mean anything without the explanation given to it by the plaintiff.
*32 It is true that the notation does not state any time during which the loan was to be secured, nor does it state the amount which the plaintiff was to borrow. Likewise, no interest rate is shown.
However, we are prone to disagree with the trial judge in his statement that the notation “subject to loan” means nothing of itself, it being our opinion that these words do mean exactly what they say, and if they are taken in their common and usual signification it would seem the $500 was paid as a deposit on a purchase price subject to a loan being made. When these words are considered in the light of the testimony of both the plaintiff and the defendant it would seem there was an oral contract to purchase if the plaintiff could raise the necessary balance of $4,500 by securing a loan.
The following Articles of the Civil Code relative to the interpretation of contracts must be considered:
“Construction of words used. — The words of a contract are to be understood, like those of a law, in the common and usual signification, without attending so much to gramatical rules, as to general and popular use.” Article 1946.
“Common intention controls. — When there is anything doubtful in agreements, we must endeavor to ascertain what was the common intention of the parties, rather than to adhere to the literal sense of the terms.” Article 1950.
“Agreement construed as a whole. — All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act.” Article 1955.
“Construction by parties — Effect.-—When the intent of the parties is doubtful, the construction put upon it, by the manner in which it has been executed by both, or by one with the express or implied assent of the other, furnishes a rule for its interpretation.” Article 1956.
The defendant under cross examination testified it was his intention to sell the property to the plaintiff for $5,000, and that he knew the plaintiff would have to borrow practically all of this amount. He also states he went to the Union Federal Savings & Loan Association with the plaintiff to obtain a loan. The defendant admitted that he saw the notation on the back of the $500 check, and that it was his understanding the plaintiff “was to have a loan.” He further stated he would refund the money if “we could work out a deal.” ' The counter offer made by the defendant to finance part of the purchase price himself was made only after the plaintiff had demanded the refund through his attorneys.
The plaintiff testified that the defendant promised to return the $500 if he, the plaintiff, could not obtain a loan, and the plaintiff puts the time of this agreement as the time he gave him the check. The plaintiff further states that the defendant promised to return the $500 if he could not obtain a loan on the day after the defendant accompanied him to the Union Federal Savings & Loan Association. The plaintiff states he asked the defendant to take a second mortgage to secure the balance of the purchase price but that the defendant told him he was a veteran and would probably be called into Service, so he could not take that chance, but that he would talk it over with his wife and call him by telephone. The plaintiff called the defendant that night and was told by the defendant that his wife did not think they could go through with this agreement, and the plaintiff then stated he would send his wife in the morning to get the check for $500. This he did, and the defendant told plaintiff’s wife he would refund the money after he sold the house. Plaintiff’s wife substantiates the oral agreement to be as outlined by the plaintiff.
Article 2021 of the Civil Code seems pertinent: “Conditional obligations defined— Classification as to time effective. — Conditional obligations are such as are made to depend on an uncertain event. If the obligation is not to take effect until the event happens, it is a suspensive condition ; if the obligation take effect immediately, but is liable to be defeated when the event happens, it is then a resolutory condition.”
Such contracts as are defined in the foregoing article have -been repeatedly recognized in our jurisprudence, one of the *33 latest expressions of this recognition being made in the case of Schroeder v. Morris, La.App., 20 So.2d 437.
The contract made between the litigants was based upon a suspensive condition and the plaintiff’s obligation to purchase did not come into existence until the happening of the event on which the offer was conditioned. As he was unable to obtain a loan, plaintiff’s obligation has not come into existence and he is at liberty to withdraw and to require that his deposit be returned to him. The agreement to sell and purchase was conditioned upon plaintiff obtaining a loan. The condition is clearly stated on the reverse of the check and the evidence sustains it. It was for cash. The plaintiff made a diligent effort to comply with the suspensive condition.
Consequently, the judgment of the District Court is reversed and set aside and judgment is now entered in favor of the plaintiff and against the defendant in the sum of $500 together with legal interest thereon from date of judicial demand until paid, together with costs.